# EXHIBIT 5

**quinn emanuel** trial lawyers | new york

51 Madison Avenue, 22nd Floor, New York, New York 10010-1601 | TEL (212) 849-7000 FAX (212) 849-7100

WRITER'S DIRECT DIAL NO.
**(212) 849-7617**

WRITER'S EMAIL ADDRESS
**danielkoffmann@quinnemanuel.com**

December 14, 2022

**HIGHLY CONFIDENTIAL**
**FOIA CONFIDENTIAL TREATMENT REQUESTED**

**VIA ELECTRONIC MAIL**

Reenah L. Kim
Bureau of Consumer Protection
Division of Enforcement
Federal Trade Commission
600 Pennsylvania Avenue NW, CC-9528
Washington, DC 20580
rkim1@ftc.gov
DEbrief@ftc.gov

Re:    *In the Matter of Twitter, Inc.*, FTC File No. 202-3062

Dear Ms. Kim:

We write on behalf of Twitter, Inc., in response to your November 30, 2022, letter seeking information about Twitter personnel, pursuant to Part XIII of the Decision and Order published on the Federal Trade Commission's website on June 6, 2022, relating to *In the Matter of Twitter, Inc.*, Docket No. C-4316 ("2022 Order").

As we have discussed, Twitter has confirmed that it is committed to ensuring the FTC obtains all relevant information regarding the Company's information security and data privacy programs and that responding to the Commission's outstanding information and document demands is of the highest priority. As we also have discussed, Twitter is undergoing a fundamental transformation that began in earnest when Elon Musk acquired control of the Company on October 27, 2022. That transformation has involved, among other things, a significant reduction in headcount due to reductions in force and voluntary resignations. The Company also is undergoing a substantial overhaul of its organizational structure, budgeting, revenue-generation priorities, and other fundamental aspects of the business.

**quinn emanuel urquhart & sullivan, llp**

ATLANTA | AUSTIN | BERLIN | BOSTON | BRUSSELS | CHICAGO | DALLAS | DOHA | HAMBURG | HONG KONG | HOUSTON | LONDON |
LOS ANGELES | MANNHEIM | MIAMI | MUNICH | NEUILLY-LA DEFENSE | NEW YORK | PARIS | PERTH | RIYADH | SALT LAKE CITY |
SAN FRANCISCO | SEATTLE | SHANGHAI | SILICON VALLEY | STUTTGART | SYDNEY | TOKYO | WASHINGTON, DC | ZURICH

**HIGHLY CONFIDENTIAL**
**FOIA CONFIDENTIAL TREATMENT REQUESTED**

The Company does not have unlimited resources, and it has been working diligently to generate detailed responses to each of the 27 requests (containing more than 100 subparts) in your November 30, 2022, letter, but it has not been able to do so within the 14-day response period you imposed consistent with continuing to operate the Company and meet its obligations to safeguard the privacy of Twitter users' data. The Company is committed to providing the Commission with documents and information relevant to its obligations under the 2022 Order, and it intends to continue to work with the Commission to produce those materials on accelerated timelines.

Below please find Twitter's responses to the specific questions in your November 30, 2022, letter. The Company is continuing to gather responsive information and documents and will supplement any incomplete response as soon as practicable.

**FTC REQUEST 1**

1. *Identify the individual(s) serving as Chief Executive Officer at Twitter since October 27, 2022, whether in an acting, temporary, or permanent capacity. To the extent more than one individual has held this position, specify the applicable time periods for each such individual. For each:*

    a. *State how long the individual worked at Twitter and in what capacity (i.e., describe other positions the individual previously held at the Company).*

    b. *Explain why the individual was selected as Chief Executive Officer (e.g., provide their qualifications for the position).*

    c. *Describe in detail the individual's job duties, roles, and responsibilities, and any involvement, participation, control, or authority to control they have or have had in implementing or complying with Order (e.g., providing oversight or giving instructions to Twitter personnel relating to the Order).*

    d. *Identify the final decisionmaker for the selection of this individual to serve as Chief Executive Officer.*

**TWITTER RESPONSE**

Elon Musk has served as the Chief Executive Officer of Twitter since October 27, 2022. He had no employment affiliation with Twitter prior to that date. Mr. Musk has general supervisory authority over the business of the Company, including influencing the design, establishment, and implementation of a comprehensive privacy and information security program as required by the Order. Twitter has confirmed that Mr. Musk has exercised this authority on one occasion, in a Company-wide email on November 10, 2022, that stated: "I cannot emphasize enough that Twitter will do whatever it takes to adhere to both the letter and spirit of the FTC

**HIGHLY CONFIDENTIAL**
**FOIA CONFIDENTIAL TREATMENT REQUESTED**

consent decree. Anything you read to the contrary is absolutely false. The same goes for any other government regulatory matters where Twitter operates."

**FTC REQUEST 2**

2. *Identify the individual(s) serving as Chief Financial Officer at Twitter since October 27, 2022, whether in an acting, temporary, or permanent capacity. To the extent more than one individual has held this position, specify the applicable time periods for each such individual. For each:*

   a. *State how long the individual worked at Twitter and in what capacity (i.e., describe other positions the individual previously held at the Company).*

   b. *Explain why the individual was selected as Chief Financial Officer (e.g., provide their qualifications for the position).*

   c. *Describe in detail the individual's job duties, roles, and responsibilities, and any involvement, participation, control, or authority to control they have or have had in implementing or complying with Order (e.g., providing oversight or giving instructions to Twitter personnel relating to the Order).*

   d. *Identify the final decisionmaker for the selection of this individual to serve as Chief Financial Officer.*

**TWITTER RESPONSE**

The Chief Financial Officer position has been unoccupied since October 27, 2022.  The Company has been working diligently since October 27, 2022, to evaluate and optimize its organizational structure.  This initiative has entailed, among other things, meetings and interviews with senior personnel who worked at the Company prior to October 27; analyses by senior leaders of the Company, including Elon Musk; and numerous meetings and deliberations among senior staff to assess the Company's needs and resources going forward.  The Company is in the final stages of its analysis and expects to finalize a new organizational structure shortly.  The Company will update the Commission as soon as the new organizational structure is finalized.

**FTC REQUEST 3**

3. *Identify the individual(s) serving as General Counsel at Twitter since October 27, 2022, whether in an acting, temporary, or permanent capacity. To the extent more than one*

**HIGHLY CONFIDENTIAL**
**FOIA CONFIDENTIAL TREATMENT REQUESTED**

*individual has held this position, specify the applicable time periods for each such individual. For each:*

a. *State how long the individual worked at Twitter and in what capacity (i.e., describe other positions the individual previously held at the Company).*

b. *Explain why the individual was selected as General Counsel (e.g., provide their qualifications for the position).*

c. *Describe in detail the individual's job duties, roles, and responsibilities, and any involvement, participation, control, or authority to control they have or have had in implementing or complying with Order (e.g., providing oversight or giving instructions to Twitter personnel relating to the Order).*

d. *Identify the final decisionmaker for the selection of this individual to serve as General Counsel.*

**TWITTER RESPONSE**

The General Counsel position has been unoccupied since October 27, 2022. The Company has been working diligently since October 27, 2022, to evaluate and optimize its organizational structure. This initiative has entailed, among other things, meetings and interviews with senior personnel who worked at the Company prior to October 27; analyses by senior leaders of the Company, including Elon Musk; and numerous meetings and deliberations among senior staff to assess the Company's needs and resources going forward. The Company is in the final stages of its analysis and expects to finalize a new organizational structure shortly. The Company will update the Commission as soon as the new organizational structure is finalized.

**FTC REQUEST 4**

4. *Identify the individual(s) serving as Head of Legal, Policy, and Trust at Twitter since October 27, 2022, whether in an acting, temporary, or permanent capacity. To the extent more than one individual has held this position, specify the applicable time periods for each such individual. For each:*

a. *State how long the individual worked at Twitter and in what capacity (i.e., describe other positions the individual previously held at the Company).*

b. *Explain why the individual was selected as Head of Legal, Policy, and Trust (e.g., provide their qualifications for the position).*

c. *Describe in detail the individual's job duties, roles, and responsibilities, and any involvement, participation, control, or authority to control they have or have had in*

**HIGHLY CONFIDENTIAL**
**FOIA CONFIDENTIAL TREATMENT REQUESTED**

*implementing or complying with Order (e.g., providing oversight or giving instructions to Twitter personnel relating to the Order).*

d. *Identify the final decisionmaker for the selection of this individual to serve as Head of Legal, Policy, and Trust.*

**TWITTER RESPONSE**

The Head of Legal, Policy, and Trust position has been unoccupied since October 27, 2022, and no longer exists as such.  The Company has been working diligently since October 27, 2022, to evaluate and optimize its organizational structure.  This initiative has entailed, among other things, meetings and interviews with senior personnel who worked at the Company prior to October 27; analyses by senior leaders of the Company, including Elon Musk; and numerous meetings and deliberations among senior staff to assess the Company's needs and resources going forward.  The Company is in the final stages of its analysis and expects to finalize a new organizational structure shortly.  The Company will update the Commission as soon as the new organizational structure is finalized.

**FTC REQUEST 5**

5. *Identify the individual(s) serving as Chief Compliance Officer at Twitter since October 27, 2022, whether in an acting, temporary, or permanent capacity. To the extent more than one individual has held this position, specify the applicable time periods for each such individual. For each:*

a. *State how long the individual worked at Twitter and in what capacity (i.e., describe other positions the individual previously held at the Company).*

b. *Explain why the individual was selected as Chief Compliance Officer (e.g., provide their qualifications for the position).*

c. *Describe in detail the individual's job duties, roles, and responsibilities, and any involvement, participation, control, or authority to control they have or have had in implementing or complying with Order (e.g., providing oversight or giving instructions to Twitter personnel relating to the Order).*

d. *Identify the final decisionmaker for the selection of this individual to serve as Chief Compliance Officer.*

**TWITTER RESPONSE**

Marianne Fogarty served as the permanent Chief Compliance Officer at the Company from May 1, 2020, through November 9, 2022.  Prior to serving as Chief Compliance Officer, Ms.

**HIGHLY CONFIDENTIAL**
**FOIA CONFIDENTIAL TREATMENT REQUESTED**

Fogarty served as Senior Director for Legal and Compliance from April 2, 2017, through May 1, 2020, and as Director of Legal from when she started working at Twitter on August 10, 2015, through April 2, 2017.  Ms. Fogarty was promoted to the position of Chief Compliance Officer at the determination of then-General Counsel Sean Edgett based on her performance in her previous roles.

As Chief Compliance Officer, Ms. Fogarty was responsible for overseeing a team investigating issues relating to the misuse of, or inappropriate access to personal data performed by any Twitter personnel.  Ms. Fogarty also sat on the Company's Data Governance Committee.

The Chief Compliance Officer position has been unoccupied since Ms. Fogarty's resignation.  The Company has been working diligently since October 27, 2022, to evaluate and optimize its organizational structure.  This initiative has entailed, among other things, meetings and interviews with senior personnel who worked at the Company prior to October 27; analyses by senior leaders of the Company, including Elon Musk; and numerous meetings and deliberations among senior staff to assess the Company's needs and resources going forward.  The Company is in the final stages of its analysis and expects to finalize a new organizational structure shortly.  The Company will update the Commission as soon as the new organizational structure is finalized.

**FTC REQUEST 6**

6. *Identify the individual(s) serving as Chief Privacy Officer at Twitter since October 27, 2022, whether in an acting, temporary, or permanent capacity. To the extent more than one individual has held this position, specify the applicable time periods for each such individual. To the extent this position was unfilled for any period of time, specify those periods as part of Your response. To the extent this position was dissolved or incorporated or reorganized into another job function, explain when and how this occurred. For each individual who held the position:*

   a. *State how long the individual worked at Twitter and in what capacity (i.e., describe other positions the individual previously held at the Company).*

   b. *Explain why the individual was selected as Chief Privacy Officer (e.g., provide their qualifications for the position).*

   c. *Describe in detail the individual's job duties, roles, and responsibilities, and any involvement, participation, control, or authority to control they have or have had in implementing or complying with Order (e.g., providing oversight or giving instructions to Twitter personnel relating to the Order).*

   d. *Identify the final decisionmaker for the selection of this individual to serve as Chief Privacy Officer.*

**HIGHLY CONFIDENTIAL**
**FOIA CONFIDENTIAL TREATMENT REQUESTED**

**TWITTER RESPONSE**

Damien Kieran served as the permanent Chief Privacy Officer at the Company from June 30, 2022, through November 10, 2022. Prior to serving as Chief Privacy Officer, Mr. Kieran served as Director, Legal Counsel and, internally, as Head of Privacy and Data Protection from August 3, 2020, through June 30, 2022; as Director, Legal Counsel from February 2019 through August 3, 2020; as Senior Legal Counsel and, internally, as Associate Director, Legal, Data Protection Officer, from February 27, 2018, through February 2019; and as Legal Counsel from when he started at Twitter on January 11, 2016, through February 27, 2018. Mr. Kieran was promoted to the position of Chief Privacy Officer at the determination of then-General Counsel Sean Edgett based on his performance in his previous roles.

As Chief Privacy Officer, Mr. Kieran was responsible for overseeing the Privacy and Data Protection Program. He was responsible for identifying and delegating the responsibility for implementation of the Privacy and Data Protection Program, providing a senior-level review of privacy-related policies and key privacy initiatives, overseeing incident response as necessary, and reporting to the Board. Mr. Kieran had oversight regarding the Company's implementation of and compliance with the Order, which included giving instructions to other Twitter personnel relating to the Order. Mr. Kieran also sat on the Company's Data Governance Committee.

The Chief Privacy Officer position has been unoccupied since Mr. Kieran's resignation. The Company has been working diligently since October 27, 2022, to evaluate and optimize its organizational structure. This initiative has entailed, among other things, meetings and interviews with senior personnel who worked at the Company prior to October 27; analyses by senior leaders of the Company, including Elon Musk; and numerous meetings and deliberations among senior staff to assess the Company's needs and resources going forward. The Company is in the final stages of its analysis and expects to finalize a new organizational structure shortly. The Company will update the Commission as soon as the new organizational structure is finalized.

**FTC REQUEST 7**

7. *Identify the individual(s) serving as Chief Information Security Officer at Twitter since October 27, 2022, whether in an acting, temporary, or permanent capacity. To the extent more than one individual has held this position, specify the applicable time periods for each such individual. To the extent this position was unfilled for any period of time, specify those periods as part of Your response. To the extent this position was dissolved or incorporated or reorganized into another job function, explain when and how this occurred. For each individual who held the position:*

   a. *State how long the individual worked at Twitter and in what capacity (i.e., describe other positions the individual previously held at the Company).*

**HIGHLY CONFIDENTIAL**
**FOIA CONFIDENTIAL TREATMENT REQUESTED**

> *b. Explain why the individual was selected as Chief Information Security Officer (e.g., provide their qualifications for the position).*
>
> *c. Describe in detail the individual's job duties, roles, and responsibilities, and any involvement, participation, control, or authority to control they have or have had in implementing or complying with Order (e.g., providing oversight or giving instructions to Twitter personnel relating to the Order).*
>
> *d. Identify the final decisionmaker for the selection of this individual to serve as Chief Information Security Officer.*

**TWITTER RESPONSE**

Lea Kissner served as the permanent Chief Information Security Officer at the Company from May 10, 2022, through November 9, 2022. Prior to serving as Chief Information Security Officer, Dr. Kissner served as Distinguished Engineer from when they started at Twitter on April 19, 2021, through May 10, 2022. Dr. Kissner was promoted to the position of Chief Information Security Officer by then-General Manager of Core Tech, Nick Caldwell based on their performance in their previous role.

As Chief Information Security Officer, Dr. Kissner was responsible for overseeing the Information Security Program, which works hand-in-hand with the Privacy and Data Protection Program to deliver on Twitter's Privacy and Data Protection Program mission. Dr. Kissner was responsible for identifying and delegating the responsibility for implementation of the Information Security Program, providing a senior-level review of security-related policies and key security initiatives, overseeing incident response as necessary, and reporting to the Board. Dr. Kissner also sat on the Company's Data Governance Committee.

The Chief Information Security Officer position has been unoccupied since Dr. Kissner's resignation. The Company has been working diligently since October 27, 2022, to evaluate and optimize its organizational structure. This initiative has entailed, among other things, meetings and interviews with senior personnel who worked at the Company prior to October 27; analyses by senior leaders of the Company, including Elon Musk; and numerous meetings and deliberations among senior staff to assess the Company's needs and resources going forward. The Company is in the final stages of its analysis and expects to finalize a new organizational structure shortly. The Company will update the Commission as soon as the new organizational structure is finalized.

**FTC REQUEST 8**

> *8. To the extent not addressed in response to the requests above, identify all officers and executives since October 27, 2022, with responsibility for Twitter's compliance with the Order, or who have or have had any involvement, participation, control, or authority to control Twitter's acts and practices relating to its compliance with the Order, including*

**HIGHLY CONFIDENTIAL**
**FOIA CONFIDENTIAL TREATMENT REQUESTED**

*but not limited to the Company's design, establishment, and implementation of a comprehensive privacy and information security program as required by the Order (e.g., providing oversight or giving instructions to Twitter personnel relating to the Order).*

**TWITTER RESPONSE**

Since October 27, 2022, the following additional officers and executives have been involved with Twitter's acts and practices relating to its compliance with the Order:  Jim Baker, Renato Monteiro, and Alan Rosa.

**FTC REQUEST 9**

9. *Identify all positions and roles at Twitter that Elon Musk has held since October 27, 2022 (e.g., Chief Executive Officer, owner, member, director, officer), specifying the applicable time periods and describing the full authorities, duties, and responsibilities that each such position and role entailed.*

**TWITTER RESPONSE**

Since October 27, 2022, Mr. Musk has served as the sole director and as Chief Executive Officer, President, Treasurer, and Secretary.  Mr. Musk has general supervisory authority over the business of the Company, including influencing the design, establishment, and implementation of a comprehensive privacy and information security program as required by the Order.  Twitter has confirmed that Mr. Musk has exercised this authority on one occasion, in a Company-wide email on November 10, 2022, that stated: "I cannot emphasize enough that Twitter will do whatever it takes to adhere to both the letter and spirit of the FTC consent decree. Anything you read to the contrary is absolutely false. The same goes for any other government regulatory matters where Twitter operates."  Mr. Musk also has the authorities, duties, and responsibilities assigned to his positions in Twitter's Amended and Restated Bylaws, which can be found at: https://www.sec.gov/Archives/edgar/data/1418091/000119312522272772/d411753dex32.htm.

**FTC REQUEST 10**

10. *Describe in detail any involvement, participation, control, or authority to control that Elon Musk has or has had with respect to Twitter's acts and practices relating to its compliance with the Order, including but not limited to the Company's design, establishment, and implementation of a comprehensive privacy and information security program as required by the Order (e.g., providing oversight or giving instructions to Twitter personnel relating to the Order).*

**HIGHLY CONFIDENTIAL**
**FOIA CONFIDENTIAL TREATMENT REQUESTED**

**TWITTER RESPONSE**

Mr. Musk has general supervisory authority over the business of the Company, including influencing the design, establishment, and implementation of a comprehensive privacy and information security program as required by the Order.  Twitter has confirmed that Mr. Musk has exercised this authority on one occasion, in a Company-wide email on November 10, 2022, that stated: "I cannot emphasize enough that Twitter will do whatever it takes to adhere to both the letter and spirit of the FTC consent decree. Anything you read to the contrary is absolutely false. The same goes for any other government regulatory matters where Twitter operates."

**FTC REQUEST 11**

11. *Describe in detail any involvement, participation, control, or authority to control that Elon Musk had with respect to Twitter's acts and practices relating to its development and implementation of the new version of Twitter Blue that launched on November 9, 2022 (e.g., providing oversight or giving instructions to Twitter personnel relating to Twitter Blue).*

**TWITTER RESPONSE**

Mr. Musk has general supervisory authority over the Company's products and services. As reported in the Company's December 2, 2022, letter in response to Request 2.f., Esther Crawford and Eric Farraro, who are the co-leads of the Company's Non-Ads Monetization team have been leading the Company's efforts in developing and implementing Twitter Blue.  They are reporting to Mr. Musk and taking direction from him with respect to this work.

**FTC REQUEST 12**

12. *Describe in detail any involvement, participation, control, or authority to control that Elon Musk had with respect to the terminations, layoffs, or reductions in force that took place at Twitter during the period from October 27, 2022, to the present (e.g., providing oversight or giving instructions to Twitter personnel regarding the terminations/reductions).*

**TWITTER RESPONSE**

Mr. Musk has general supervisory authority over the business of the Company, including as relates to the terminations, layoffs, or reductions in force that took place at the Company during the period from October 27, 2022, to the present.  In this capacity, Mr. Musk directed both the November 4, 2022, and November 20, 2022, reductions in force; the November 16, 2022, optional resignation offering; and the November 15, 2022, and November 23, 2022, performance-based terminations.

**HIGHLY CONFIDENTIAL**
**FOIA CONFIDENTIAL TREATMENT REQUESTED**

**FTC REQUEST 13**

> 13. *Describe in detail any involvement, participation, control, or authority to control that Elon Musk had with respect to Twitter's privacy, information security, or data protection practices since October 27, 2022 (e.g., providing oversight or giving instructions to Twitter personnel regarding such practices), and describe in detail any changes Musk has made or implemented (or directed to be made or implemented) to Twitter's privacy, information security, or data protection practices since October 27, 2022.*

**TWITTER RESPONSE**

Mr. Musk has general supervisory authority over the business of the Company, including influencing Twitter's privacy, information security, and data protection practices. Twitter has confirmed that Mr. Musk has exercised this authority on one occasion, in a Company-wide email on November 10, 2022, that stated: "I cannot emphasize enough that Twitter will do whatever it takes to adhere to both the letter and spirit of the FTC consent decree. Anything you read to the contrary is absolutely false. The same goes for any other government regulatory matters where Twitter operates."

**FTC REQUEST 14**

> 14. *State whether the Company has reduced the internal budget or other resources for any privacy, information security, data protection, or risk management functions, or for any other projects or programs relating to the comprehensive privacy and information security program mandated by the Order (including but not limited to the independent third-party assessor). If so, specify what the reduction was and who the final decisionmaker was for that reduction.*

**TWITTER RESPONSE**

The Company is undergoing a review of all budgets and on-going expenses, including those related to the privacy and information security programs. This review proceeds from a "zero based" budgeting premise, which assumes that every expense will have to be re-justified. There is a definitive goal to reduce expenses and potential waste, which may include conducting viability assessments of existing partners. These initiatives may affect the internal budget or other resources that support the privacy and information security programs, but only to the extent consistent with Mr. Musk's instruction on November 10, 2022, that "Twitter will do whatever it takes to adhere to both the letter and spirit of the FTC consent decree … [and] any other government regulatory matters where Twitter operates." As of the date of this letter, no final decision has been made about changes (if any) to the budget and resources devoted to the privacy and information security programs. The Company will update the Commission when a budget is finalized.

**HIGHLY CONFIDENTIAL**
**FOIA CONFIDENTIAL TREATMENT REQUESTED**

**FTC REQUEST 15**

15. *State whether, since October 27, 2022, Twitter has eliminated, truncated, reduced, or changed the nature of any of its privacy or security reviews, risk assessments, or software testing processes (including but not limited to Software Development lifecycle, Data Governance Committee reviews, the internal "Flyaway" review process, or a "production readiness" review). If so, specify what the changes were and explain whether You have replaced, or plan to replace the functionalities of those reviews, assessments, and processes.*

**TWITTER RESPONSE**

The Company has confirmed that it has not made any changes to its policies and procedures regarding its privacy or security reviews, risk assessments, or software testing processes since October 27, 2022.

**FTC REQUEST 16**

16. *Identify all Twitter personnel who report directly to Elon Musk. For each:*

   a. *State the individual's job position and function, and state how long the individual worked at Twitter and in what capacity (i.e., describe other positions the individual previously held at the Company).*

   b. *Describe in detail the individual's job duties, roles, and responsibilities, and any involvement, participation, control, or authority to control they have or have had in implementing or complying with Order (e.g., providing oversight or giving instructions to other Twitter personnel relating to the Order).*

**TWITTER RESPONSE**

The Company has been working diligently since October 27, 2022, to evaluate and optimize its organizational structure.  This initiative has entailed, among other things, meetings and interviews with senior personnel who worked at the Company prior to October 27; analyses by senior leaders of the Company, including Elon Musk; and numerous meetings and deliberations among senior staff to assess the Company's needs and resources going forward.  The Company is in the final stages of its analysis and expects to finalize a new organizational structure shortly.  The Company will update the Commission as soon as the new organizational structure is finalized and will provide a list of Mr. Musk's direct reports at that time, which the Company expects will be more useful to the Commission than a list of direct reports that the Company expects to change fundamentally in a matter of days.

**HIGHLY CONFIDENTIAL**
**FOIA CONFIDENTIAL TREATMENT REQUESTED**

**FTC REQUEST 17**

> 17. *Produce all communications (including but not limited to emails, memos, and Slack communications) relating to Elon Musk, including any communications sent to any Twitter personnel by or at the direction of, or received by, Musk since October 27, 2022, as well as all other communications discussing communications, instructions, or directives from Musk. For any communications You withhold or redact based on a privilege You seek to assert, submit a detailed privilege log providing the basis for each such claim.*

**TWITTER RESPONSE**

As we have discussed, Twitter objects to this request as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. In a letter dated December 5, 2022, Twitter proposed a document review protocol that would satisfy the FTC's legitimate interests in obtaining Mr. Musk's communications. We received your response with certain additional requests and modifications to the review protocol proposed in Twitter's December 5, 2022, letter. Twitter appreciates the FTC's constructive dialogue regarding the Company's efforts to provide the FTC with relevant information without needlessly burdening the Company's operations and requiring disclosure of personal and irrelevant information.

The Company is considering your response and is happy to meet and confer regarding your requested edits to the review protocol. Your request that Twitter produce communications from "any" email account Elon Musk used "to conduct business relating to Twitter," however, is not workable. Twitter cannot commit to reviewing or producing communications in email accounts that are not within the possession, custody, or control of Twitter. Twitter will make a request of other companies with which Mr. Musk is affiliated that they produce to Twitter communications that would be responsive to the criteria contained in the review protocol. But Twitter does not control whether those companies will comply with Twitter's request, and it has no legal right to compel those companies to produce documents. *See, e.g., Soto v. City of Concord*, 162 F.R.D. 603, 619 (N.D. Cal 1995) (party may be ordered to produce a document in possession of a nonparty only if party has the legal right to obtain the document from nonparty); *cf. General Metals of Tacoma, Inc. v. Bean Environmental LLC*, 2006 WL 2927730 (W.D. Wash. Oct. 11, 2006).

We are happy to meet and confer with the Commission to discuss further an appropriate scope for this document demand.

**FTC REQUEST 18**

> 18. *In Your November 25, 2022, response to the FTC's November 10, 2022, demand letters, You provided a summary of resignations and terminations at Twitter that occurred between October 27, 2022 and November 19, 2022 at 8 p.m. PST. Please provide an update on any additional resignations and terminations that have occurred since November 19, 2022, by*

**HIGHLY CONFIDENTIAL**
**FOIA CONFIDENTIAL TREATMENT REQUESTED**

*submitting information that fully addresses questions 1, 2, and 3 of the FTC's November 10, 2022, letters.*

**TWITTER RESPONSE**

The Company does not have unlimited resources, and it has been working diligently to generate a response to this request, but it has not been able to do so within the 14-day response period you imposed in your November 30, 2022, letter consistent with continuing to operate the Company and meet its obligations to safeguard the privacy of Twitter users' data. The Company is committed to providing the Commission with documents and information relevant to its obligations under the 2022 Order, and it intends to continue to work with the Commission to produce those materials on accelerated timelines. The Company will supplement this response as soon as practicable.

The Company also has been working diligently since October 27, 2022, to evaluate and optimize its organizational structure. This initiative has entailed, among other things, meetings and interviews with senior personnel who worked at the Company prior to October 27; analyses by senior leaders of the Company, including Elon Musk; and numerous meetings and deliberations among senior staff to assess the Company's needs and resources going forward. The Company is in the final stages of its analysis and expects to finalize a new organizational structure shortly.

**FTC REQUEST 19**

19. *For the summary of resignations and terminations at Twitter that You provided on pages 2-3 of Your November 25, 2022, response to the FTC's November 10, 2022, letters, explain what the parenthetical percentage figures represent, and clarify whether the percentages You provided reflect reductions as a percentage of total headcount in each department (e.g., resignations + terminations/reductions in force within Bluebird accounted for 81% of the total headcount in Bluebird during the October 27-November 19 period) or as a percentage of the Company's total workforce.*

**TWITTER RESPONSE**

The summary of resignations and terminations at Twitter that Twitter provided on pages 2–3 of its November 25, 2022, response to the FTC's November 10, 2022, letters, included parenthetical percentage figures reflecting reductions as a percentage of the total workforce in each department.

**HIGHLY CONFIDENTIAL**
**FOIA CONFIDENTIAL TREATMENT REQUESTED**

**FTC REQUEST 19.a.**

> a. *To the extent You have not already done so, state the total number of employees and contractors that to date were terminated, as a percentage of the Company's total workforce, as sought by request 1 of the November 10 letter.*

**TWITTER RESPONSE**

The Company does not have unlimited resources, and it has been working diligently to generate a response to this request, but it has not been able to do so within the 14-day response period you imposed in your November 30, 2022, letter consistent with continuing to operate the Company and meet its obligations to safeguard the privacy of Twitter users' data. The Company is committed to providing the Commission with documents and information relevant to its obligations under the 2022 Order, and it intends to continue to work with the Commission to produce those materials on accelerated timelines. The Company will supplement this response as soon as practicable.

The Company also has been working diligently since October 27, 2022, to evaluate and optimize its organizational structure. This initiative has entailed, among other things, meetings and interviews with senior personnel who worked at the Company prior to October 27; analyses by senior leaders of the Company, including Elon Musk; and numerous meetings and deliberations among senior staff to assess the Company's needs and resources going forward. The Company is in the final stages of its analysis and expects to finalize a new organizational structure shortly.

**FTC REQUEST 19.b.**

> b. *To the extent You have not already done so, state the total number of employees and contractors that to date resigned, as a percentage of the Company's total workforce, as sought by request 1 of the November 10 letter.*

**TWITTER RESPONSE**

The Company does not have unlimited resources, and it has been working diligently to generate a response to this request, but it has not been able to do so within the 14-day response period you imposed in your November 30, 2022, letter consistent with continuing to operate the Company and meet its obligations to safeguard the privacy of Twitter users' data. The Company is committed to providing the Commission with documents and information relevant to its obligations under the 2022 Order, and it intends to continue to work with the Commission to produce those materials on accelerated timelines. The Company will supplement this response as soon as practicable.

The Company also has been working diligently since October 27, 2022, to evaluate and optimize its organizational structure. This initiative has entailed, among other things, meetings

**HIGHLY CONFIDENTIAL**
**FOIA CONFIDENTIAL TREATMENT REQUESTED**

and interviews with senior personnel who worked at the Company prior to October 27; analyses by senior leaders of the Company, including Elon Musk; and numerous meetings and deliberations among senior staff to assess the Company's needs and resources going forward.  The Company is in the final stages of its analysis and expects to finalize a new organizational structure shortly.

**FTC REQUEST 19.c.**

    *c.   To the extent You have not already done so, state the total number of employees and contractors that to date were terminated in each department as a percentage of total headcount in that particular department, as sought by request 1.b of the November 10 letter.*

**TWITTER RESPONSE**

    Twitter's November 25, 2022, response to the FTC's November 10, 2022, letters, included parenthetical percentage figures reflecting reductions as a percentage of the total workforce in each department as of November 19, 2022.

**FTC REQUEST 19.d.**

    *d.   To the extent You have not already done so, state the total number of employees and contractors that to date resigned in each department as a percentage of total headcount in that particular department, as sought by request 1.b of the November 10 letter.*

**TWITTER RESPONSE**

    Twitter's November 25, 2022, response to the FTC's November 10, 2022, letters, included parenthetical percentage figures reflecting reductions as a percentage of the total workforce in each department as of November 19, 2022.

**FTC REQUEST 20**

    *20. State how many of the employees and contingent workers who were terminated since October 27, 2022, held responsibilities relating to Twitter's compliance with the Order, including any personnel with responsibilities for establishing, implementing, or maintaining the comprehensive privacy and information security program mandated under the Order.*

**TWITTER RESPONSE**

    Twitter's Information Security and Privacy and Data Protection teams have primary responsibility for establishing, implementing, and maintaining the comprehensive privacy and information security program mandated under the Order.  Since October 27, 2022, 17 employees

**HIGHLY CONFIDENTIAL**
**FOIA CONFIDENTIAL TREATMENT REQUESTED**

were terminated and 18 resigned (including one employee who joined on October 31, 2022) from Twitter's Information Security team, and 10 employees were terminated and 10 employees resigned from Twitter's Privacy and Data Protection team.

**FTC REQUEST 21**

> 21. *Provide a list of current personnel with responsibilities for Twitter's compliance with the Order, including any personnel with responsibilities for establishing, implementing, or maintaining the comprehensive privacy and information security program mandated under the Order. As part of Your response, specify each person's job position, function, team, and department.*

**TWITTER RESPONSE**

Dozens of Twitter personnel have responsibilities for Twitter's compliance with the Order, including responsibilities for establishing, implementing, or maintaining the comprehensive privacy and information security program mandated by the Order. This effort includes personnel from the Information Security, Engineering, and Legal teams, as well as the Data Governance Committee. The Company has been working diligently since October 27, 2022, to evaluate and optimize its organizational structure. This initiative has entailed, among other things, meetings and interviews with senior personnel who worked at the Company prior to October 27; analyses by senior leaders of the Company, including Elon Musk; and numerous meetings and deliberations among senior staff to assess the Company's needs and resources going forward. The Company is in the final stages of its analysis and expects to finalize a new organizational structure shortly.

**FTC REQUEST 22**

> 22. *Explain the differences between the Bluebird, Goldbird, and Redbird departments.*

**TWITTER RESPONSE**

As part of its ongoing reorganization effort, the Company has determined that the Bluebird, Goldbird, and Redbird departments will no longer exist and that the functions those departments previously served will be transferred to other departments. Prior to this reorganization, Bluebird was the organization responsible for building consumer facing products and features that end users see on Twitter. Bluebird's primary goal was increasing healthy participation in the public conversation.

Goldbird was the organization responsible for monetizing Twitter. For Goldbird, this meant empowering advertisers, businesses, and developers to engage in conversation on Twitter through paid products.

**HIGHLY CONFIDENTIAL**
**FOIA CONFIDENTIAL TREATMENT REQUESTED**

Redbird was the organization and engine that powered Twitter through the Company's underlying infrastructure.  This engine enabled Twitter to innovate and execute with ease, speed, and confidence by providing a reliable, efficient, and secure foundation to build from.  Redbird operated on-premises data centers and provided foundational infrastructure for the cloud.

**FTC REQUEST 23**

*23. For each of the following job functions in the identified departments, specify the number of terminated and resigned personnel that held each function (e.g., Bluebird > IT Apps Engineering: 5 resigned + 6 terminated) and describe in detail what job duties and responsibilities the former personnel performed. As part of Your response, specify whether any of those former personnel held management or leadership responsibilities, and state whether any held responsibilities relating to information or data security, privacy, or data protection:*

**FTC REQUEST 23.a.**

    *a. Bluebird*
       *1) Business Operations*
       *2) Data Analytics*
       *3) Data Science*
       *4) Intern*
       *5) IT Apps*
       *6) Engineering*
       *7) IT Business Systems Analysis*
       *8) IT Product Management*
       *9) Product Design*
       *10) Product Management*
       *11) Project Management (Non-Tech)*
       *12) Software Engineering*
       *13) Technical Program Management*
       *14) UI/UX Research*
       *15) User Services*

**TWITTER RESPONSE**

The Company does not have unlimited resources, and it has been working diligently to generate a response to this request, but it has not been able to do so within the 14-day response period you imposed in your November 30, 2022, letter consistent with continuing to operate the Company and meet its obligations to safeguard the privacy of Twitter users' data.  The Company is committed to providing the Commission with documents and information relevant to its obligations under the 2022 Order, and it intends to continue to work with the Commission to

**HIGHLY CONFIDENTIAL**
**FOIA CONFIDENTIAL TREATMENT REQUESTED**

produce those materials on accelerated timelines. The Company will supplement this response as soon as practicable.

The Company also has been working diligently since October 27, 2022, to evaluate and optimize its organizational structure. This initiative has entailed, among other things, meetings and interviews with senior personnel who worked at the Company prior to October 27; analyses by senior leaders of the Company, including Elon Musk; and numerous meetings and deliberations among senior staff to assess the Company's needs and resources going forward. The Company is in the final stages of its analysis and expects to finalize a new organizational structure shortly.

**FTC REQUEST 23.b.**

    b. *Goldbird*
       *1) Business Operations*
       *2) Data Analytics*
       *3) Data Science*
       *4) Developer Relations*
       *5) Intern*
       *6) Product Design*
       *7) Product Management*
       *8) Site Reliability Engineering*
       *9) Software Engineering*
      *10) Technical Program Management*
      *11) UI/UX Research*

**TWITTER RESPONSE**

The Company does not have unlimited resources, and it has been working diligently to generate a response to this request, but it has not been able to do so within the 14-day response period you imposed in your November 30, 2022, letter consistent with continuing to operate the Company and meet its obligations to safeguard the privacy of Twitter users' data. The Company is committed to providing the Commission with documents and information relevant to its obligations under the 2022 Order, and it intends to continue to work with the Commission to produce those materials on accelerated timelines. The Company will supplement this response as soon as practicable.

The Company also has been working diligently since October 27, 2022, to evaluate and optimize its organizational structure. This initiative has entailed, among other things, meetings and interviews with senior personnel who worked at the Company prior to October 27; analyses by senior leaders of the Company, including Elon Musk; and numerous meetings and deliberations among senior staff to assess the Company's needs and resources going forward. The Company is in the final stages of its analysis and expects to finalize a new organizational structure shortly.

**HIGHLY CONFIDENTIAL**
**FOIA CONFIDENTIAL TREATMENT REQUESTED**

**FTC REQUEST 23.c.**

    c.  *Counsel*
        *1)  Business Operations*
        *2)  Corporate Security*
        *3)  Data Science*
        *4)  IT Business Systems Analysis*
        *5)  Legal Counsel*
        *6)  Legal Operations*
        *7)  Policy QA*
        *8)  Project Management (Non-Tech)*
        *9)  Public Policy*
        *10) SaaS Systems*
        *11) Site Integrity*
        *12) Technical Program Management*
        *13) Threat Intelligence*
        *14) Trust & Safety*

**TWITTER RESPONSE**

The Company does not have unlimited resources, and it has been working diligently to generate a response to this request, but it has not been able to do so within the 14-day response period you imposed in your November 30, 2022, letter consistent with continuing to operate the Company and meet its obligations to safeguard the privacy of Twitter users' data. The Company is committed to providing the Commission with documents and information relevant to its obligations under the 2022 Order, and it intends to continue to work with the Commission to produce those materials on accelerated timelines. The Company will supplement this response as soon as practicable.

The Company also has been working diligently since October 27, 2022, to evaluate and optimize its organizational structure. This initiative has entailed, among other things, meetings and interviews with senior personnel who worked at the Company prior to October 27; analyses by senior leaders of the Company, including Elon Musk; and numerous meetings and deliberations among senior staff to assess the Company's needs and resources going forward. The Company is in the final stages of its analysis and expects to finalize a new organizational structure shortly.

**FTC REQUEST 23.d.**

    d.  *Customers Organization*
        *1)  Business Operations*
        *2)  Data Analytics*
        *3)  Data Science*
        *4)  Developer Relations*

**HIGHLY CONFIDENTIAL**
**FOIA CONFIDENTIAL TREATMENT REQUESTED**

> *5) Project Management (Non-Tech)*
> *6) SMB*
> *7) Software Engineering*
> *8) Technical Program Management*
> *9) Twitter Client Services (TCS)*

**TWITTER RESPONSE**

The Company does not have unlimited resources, and it has been working diligently to generate a response to this request, but it has not been able to do so within the 14-day response period you imposed in your November 30, 2022, letter consistent with continuing to operate the Company and meet its obligations to safeguard the privacy of Twitter users' data. The Company is committed to providing the Commission with documents and information relevant to its obligations under the 2022 Order, and it intends to continue to work with the Commission to produce those materials on accelerated timelines. The Company will supplement this response as soon as practicable.

The Company also has been working diligently since October 27, 2022, to evaluate and optimize its organizational structure. This initiative has entailed, among other things, meetings and interviews with senior personnel who worked at the Company prior to October 27; analyses by senior leaders of the Company, including Elon Musk; and numerous meetings and deliberations among senior staff to assess the Company's needs and resources going forward. The Company is in the final stages of its analysis and expects to finalize a new organizational structure shortly.

**FTC REQUEST 23.e.**

> *e. People Team*
> *1) Business Operations*
> *2) HRBP*
> *3) HRIS & Analytics*
> *4) Software Engineering*
> *5) Technical Program Management*

**TWITTER RESPONSE**

The Company does not have unlimited resources, and it has been working diligently to generate a response to this request, but it has not been able to do so within the 14-day response period you imposed in your November 30, 2022, letter consistent with continuing to operate the Company and meet its obligations to safeguard the privacy of Twitter users' data. The Company is committed to providing the Commission with documents and information relevant to its obligations under the 2022 Order, and it intends to continue to work with the Commission to produce those materials on accelerated timelines. The Company will supplement this response as soon as practicable.

**HIGHLY CONFIDENTIAL**
**FOIA CONFIDENTIAL TREATMENT REQUESTED**

The Company also has been working diligently since October 27, 2022, to evaluate and optimize its organizational structure. This initiative has entailed, among other things, meetings and interviews with senior personnel who worked at the Company prior to October 27; analyses by senior leaders of the Company, including Elon Musk; and numerous meetings and deliberations among senior staff to assess the Company's needs and resources going forward. The Company is in the final stages of its analysis and expects to finalize a new organizational structure shortly.

**FTC REQUEST 23.f.**

> f.  Redbird
>    1)  Applications Quality
>    2)  Business Operations
>    3)  Data Analytics
>    4)  Data Science
>    5)  Database Admin/Eng
>    6)  Developer Relations
>    7)  Engineering Technical Program Management
>    8)  Enterprise Data Management
>    9)  Hardware Engineering
>    10) Information Security
>    11) IT Administration
>    12) IT Apps Engineering
>    13) IT Business Systems Analysis
>    14) IT Product Management
>    15) IT Support
>    16) IT Systems Engineering
>    17) Network Engineering
>    18) Product Design
>    19) Product Management
>    20) Project Management (Non-Tech)
>    21) Reliability Engineering
>    22) Site Operations
>    23) Site Reliability Engineering
>    24) Software Engineering
>    25) Systems Quality
>    26) Technical Program Management
>    27) Technical Writing
>    28) UI/UX Research

**TWITTER RESPONSE**

The Company does not have unlimited resources, and it has been working diligently to generate a response to this request, but it has not been able to do so within the 14-day response

**HIGHLY CONFIDENTIAL**
**FOIA CONFIDENTIAL TREATMENT REQUESTED**

period you imposed in your November 30, 2022, letter consistent with continuing to operate the Company and meet its obligations to safeguard the privacy of Twitter users' data.  The Company is committed to providing the Commission with documents and information relevant to its obligations under the 2022 Order, and it intends to continue to work with the Commission to produce those materials on accelerated timelines.  The Company will supplement this response as soon as practicable.

The Company also has been working diligently since October 27, 2022, to evaluate and optimize its organizational structure.  This initiative has entailed, among other things, meetings and interviews with senior personnel who worked at the Company prior to October 27; analyses by senior leaders of the Company, including Elon Musk; and numerous meetings and deliberations among senior staff to assess the Company's needs and resources going forward.  The Company is in the final stages of its analysis and expects to finalize a new organizational structure shortly.

**FTC REQUEST 24**

24. *State whether any of the departments identified in Your November 25 response to the FTC's November 10 letters correspond to or contain the following teams at Twitter and, if so, explain how they relate:*
   - *Application Security Team;*
   - *Core Services;*
   - *Corporate Security;*
   - *Data Management Team;*
   - *Datacenter Engineering;*
   - *Detection and Response Team (DART);*
   - *Engineering;*
   - *Engineering Product Foundations team;*
   - *Enterprise Security;*
   - *Foundational Platform Services;*
   - *Gizmoduck Team;*
   - *Hadoop Development;*
   - *Hadoop Team;*
   - *Internal Audit;*
   - *IT;*
   - *Legal Privacy & Data Protection Team;*
   - *Mission Critical Engineering;*
   - *Network Engineering;*
   - *Platform Security;*
   - *Privacy and Data Protection Team;*
   - *Security Architecture and Engineering Team;*
   - *Security Governance – Risk and Compliance Team;*
   - *Security Risk Management;*

**HIGHLY CONFIDENTIAL**
**FOIA CONFIDENTIAL TREATMENT REQUESTED**

- *SRE (Site Reliability Engineering);*
- *Twitter Command Center;*
- *Twitter Services.[1]*

## TWITTER RESPONSE

The Company has been working diligently since October 27, 2022, to evaluate and optimize its organizational structure. This initiative has entailed, among other things, meetings and interviews with senior personnel who worked at the Company prior to October 27; analyses by senior leaders of the Company, including Elon Musk; and numerous meetings and deliberations among senior staff to assess the Company's needs and resources going forward. The Company is in the final stages of its analysis and expects to finalize a new organizational structure shortly. The Company will update the Commission as soon as the new organizational structure is finalized, and, if applicable, will provide information regarding how the reorganized departments correspond to or contain the teams listed in this request.

## FTC REQUEST 25

25. *Identify all persons who have held the role of Senior Internal Audit Manager at Twitter since September 2019 who interfaced with Twitter's assessor (Ernst and Young (EY)) regarding the assessment that EY prepared pursuant to the 2011 FTC order and, for each, state whether that person currently works at Twitter. If any such person no longer works at the Company, provide their date of separation.*

## TWITTER RESPONSE

Brett Cohune held the role of Senior Internal Audit Manager from September 2019 until November 17, 2022, when he resigned from the Company. The position is currently unoccupied. The Company has been working diligently since October 27, 2022, to evaluate and optimize its organizational structure. This initiative has entailed, among other things, meetings and interviews with senior personnel who worked at the Company prior to October 27; analyses by senior leaders of the Company, including Elon Musk; and numerous meetings and deliberations among senior staff to assess the Company's needs and resources going forward. The Company is in the final stages of its analysis and expects to finalize a new organizational structure shortly. The Company will update the Commission as soon as the new organizational structure is finalized.

## FTC REQUEST 26

26. *Describe in detail the purpose and function of the Data Governance Committee at Twitter. Identify all members of the Data Governance Committee during the period from June 6,*

---

[1]   *See Independent Assessor EY's Report on Twitter's Information Security Program for the period from September 13, 2019, to September 12, 2021, at Appendix B.*

**HIGHLY CONFIDENTIAL**
**FOIA CONFIDENTIAL TREATMENT REQUESTED**

*2022, to the present and, for each, indicate whether the person still works at Twitter. If any such person no longer works at the Company, provide their date of separation.*

**TWITTER RESPONSE**

The Data Governance Committee (DGC) is responsible for all decisions to collect, maintain, use, disclose, or provide access to personal data (including Covered Information). These responsibilities include, for example, approving Twitter privacy and security policies, making decisions regarding the collection, maintenance, use, disclosure, or provision of access to personal data; and ensuring appropriate safeguards are in place to meet Twitter's obligations for protecting and safeguarding Covered Information. The DGC's mission facilitates Twitter's compliance with its obligations under the 2022 Order. To this end, the DGC is responsible for:

- Approving, interpreting, rescinding, or modifying Twitter privacy and security policies to ensure that they are consistent with Twitter's obligations to implement appropriate safeguards under the Order, including how Twitter is permitted to process personal data. Additionally, when not addressed by guidelines or policy, or when otherwise elevated to the DGC, the DGC must make decisions regarding the collection, maintenance, use, disclosure, or provision of access to personal data.

- Approving, interpreting, rescinding, or modifying Twitter guidelines for determining when a proposed activity constitutes a new or modified product, service, or practice that processes personal data such that the activity must go through the documented risk assessment and potential privacy review required by the Order.

The following Twitter employees were members of the DGC from June 6, 2022, until their resignations:

- Jay Sullivan (resigned October 27, 2022)
- Nick Caldwell (resigned October 27, 2022)
- Marianne Fogarty (resigned November 9, 2022)
- Lea Kissner (resigned November 9, 2022)
- Damien Kieran (resigned November 10, 2022)

The current members of the DGC are:

- Renato Monteiro
- Christian Dowell

**HIGHLY CONFIDENTIAL**
**FOIA CONFIDENTIAL TREATMENT REQUESTED**

**FTC REQUEST 27**

>   27. *In connection with Your November 25, 2022, response to requests 4, 5, and 6 of the FTC's November 10, 2022, demand, You indicated that You would be producing non privileged, responsive documents between October 27, 2022 and November 25, 2022 (the date of the letter). We ask that you provide updated, continuing productions on a rolling basis that include non-privileged responsive materials beyond November 25, 2022 to the present.*

**TWITTER RESPONSE**

The Company is continuing to review documents that may be responsive to this request and will produce any non-privileged documents responsive to this request on a rolling basis.

\*      \*      \*

Twitter requests, pursuant to Freedom of Information Act Exemptions 3 and 4, 5 U.S.C. § 552(b)(3)-(4), the relevant provisions of the FTC Act, 15 U.S.C. §§ 46(f), 57b-2(a-f), and all other applicable statutes, regulations, and confidentiality policies, that the Commission not enter this letter into the public record and that this letter otherwise be protected from disclosure. This letter contains confidential commercial information, the disclosure of which would cause competitive harm to Twitter. Furthermore, disclosure of this letter could compromise the integrity of Twitter's information security program. Twitter also believes this disclosure would run contrary to the intent of the Commission in issuing its 2022 Order and would frustrate Twitter's efforts to both comply with the 2022 Order and provide detailed reports.

Should a request be received by the Commission under the Freedom of Information Act for disclosure of the information to which this request for confidential treatment relates, Twitter asks that the Commission immediately notify the undersigned by telephone or electronic mail, so that we may provide any additional information regarding this request for confidential treatment that may be necessary. We further request that you communicate our request for confidentiality to any other self-regulatory organization or government agency that may request access to these materials.

Please do not hesitate to contact us to discuss further.

Respectfully submitted,

  /s/ Daniel R. Koffmann
Robert A. Zink
Daniel R. Koffmann

cc:    Lisa Hsiao (Department of Justice, Consumer Protection Branch)
       Zachary L. Cowan (Department of Justice, Consumer Protection Branch)

**<u>HIGHLY CONFIDENTIAL</u>**
**<u>FOIA CONFIDENTIAL TREATMENT REQUESTED</u>**

     J. Matthew Williams (Department of Justice, Consumer Protection Branch)
     Manu Sebastian (Department of Justice, Consumer Protection Branch)
     Cory Jacobs (Department of Justice, Fraud Section)
     David Ward (United States Attorney's Office, Northern District of California)
     Ross Weingarten (United States Attorney's Office, Northern District of California

I certify under penalty of perjury that, based on (a) information known to me as of the date this letter is signed, and (b) information provided to me as of the date this letter is signed by and through company personnel who provided assistance in generating the responses contained in this report and who have confirmed to me the accuracy of that information, I have reviewed this report and believe it to be true and accurate to the best of my current knowledge, information, and belief.

Executed on December 14, 2022.

Christian Dowell
Head of Product and IP Legal