# EXHIBIT 9



United States of America
FEDERAL TRADE COMMISSION
BUREAU OF CONSUMER PROTECTION
600 PENNSYLVANIA AVENUE NW, CC-9528
WASHINGTON, DC 20580

Reenah L. Kim
Division of Enforcement
(202) 326-2272
rkim1@ftc.gov

December 13, 2022

**VIA ELECTRONIC MAIL**

Robert A. Zink, Esq. (robertzink@quinnemanuel.com)
Daniel Koffmann, Esq. (danielkoffmann@quinnemanuel.com)
Quinn Emanuel Urquhart & Sullivan, LLP
1300  I Street NW, Suite 900
Washington, DC 20005

   Re: *In the Matter of Twitter, Inc.*, Docket No. C-4316

Dear Counsel:

   Pursuant to Part XIII of the Federal Trade Commission's May 26, 2022, Order in the above-referenced matter ("Order"), we ask that Twitter submit by **December 27, 2022**, a true and accurate written report, sworn under penalty of perjury, that addresses the following requests, and produce the requested documents and other information:

1. It was recently reported that Twitter has been providing certain third-party journalists (including but not limited to Bari Weiss, Matt Taibbi, Michael Shellenberger, Abigail Shrier, and others) with "broad and expanding access to Twitter's files"[1] and "extensive, unfiltered access to Twitter's internal communication and systems"[2] in connection with their so-called ongoing "Twitter Files" reporting. Among other things, Ms. Weiss was reportedly given access to Twitter's employee systems, added to its Slack channel(s), and given a company laptop.[3]

---

[1] https://twitter.com/bariweiss/status/1601026062887972864

[2] https://mobile.twitter.com/AbigailShrier/status/1601010924726284288

[3] https://www.businessinsider.com/elon-musk-twitter-bari-weiss-cousins-confidants-2022-12

December 13, 2022
Page 2

      a.  Identify all journalists and other members of the media to whom You[4] have granted any type of access to the Company's internal communications (e.g., Slack, emails), Resources,[5] internal documents, and/or files since October 27, 2022.

      b.  For each, describe in detail (i) the nature of access You have granted to that person, including but not limited to each and every network, system, software, and the nature of any internal communications, documents, and/or files, to which the access was provided; (ii) the purpose(s) for which such access was granted; (iii) the person(s) who made the decision to grant such access; (iv) the means by which that person was granted access, including the length of time that access was granted, and all rules and limitations upon such access; (v) any credentialing or background check You conducted for such person; and (iv) whether that person has been or would be able to gain access to any other Twitter communications or systems

      c.  State whether You granted any journalist or member of the media access or the ability to view a Twitter User's direct messages, protected Tweets, or other non-public information and, if so, describe the nature and circumstances of that access, and state the purpose(s) for providing such access.

      d.  State what steps You took, if any, to ensure that a journalist or member of the media did not gain unauthorized access to data or information.

      e.  State whether Your granting journalists and members of the media "extensive, unfiltered," "broad and expanding" access to Twitter's documents and files, internal communications, and Resources is consistent with your privacy and information security obligations under the Order, and explain the complete basis for Your response.

2.      Provide screenshots of all consent flows or permission screens users previously saw and currently see since November 8, 2022, when:

      a.  signing up for Twitter Blue (also known as Twitter Verified); and

      b.  when remaining part of the Twitter Blue subscription.

3.      In Your December 11, 2022, letter, You state that "accounts signing up for new subscriptions to Twitter Blue will have to provide a phone number if there is not yet a

---

[4] For purposes of this letter, "You" and "Your" shall mean Twitter, Inc., its successors and assigns, and any business it controls directly or indirectly, and all directors, officers, members, employees, agents, consultants, and other persons working for or on behalf of the foregoing.

[5] For purposes of these requests, "Resources" means "networks, systems, and software," as defined in the Order, Definition D.

December 13, 2022
Page 3

phone number associated with the account." Relating to Your collection of such phone numbers:

    a. Explain how Twitter will use such phone numbers, including whether Twitter will use phone numbers in connection with advertisements, or to disclose to third parties.

    b. Provide documents sufficient to show each materially different claim or statement made to consumers relating to the collection of phone numbers in connection with Twitter Blue, including advertisements, representations, claims, statements, screenshots of consent flows or permission screens, privacy policies, terms of use agreements, tweets, help pages, and blog posts.

    c. In Your December 11, 2022, letter, You state that Twitter may disclose phone numbers "to third parties consistent with Twitter's Privacy Policy." Describe how users are reminded to review Twitter's Privacy Policy when signing up for Twitter Blue.

4. State whether users who previously subscribed to the new version of Twitter Blue (also known as Twitter Verified) that launched on November 9, 2022, can retain the blue check mark that appears alongside their accounts on Twitter. If so, state:

    a. whether those users are required to provide additional information, and if so, describe the additional information required and how users are prompted for this information; and

    b. whether Twitter conducts any additional reviews or measures to authenticate or verify their account, and if so, explain what the additional reviews and/or authentication and verification measures entail.

5. State how many users signed up for new subscriptions of Twitter Blue (also known as Twitter Verified) during the November 9-10, 2022, timeframe ("New November Subscribers").

    a. Of the New November Subscribers, state how many of such accounts remain active on Twitter.

    b. Of the New November Subscribers, state how many have since been suspended or terminated, and provide the reason(s) for the suspension or termination.

6. State whether the Twitter Blue new feature released on December 12, 2022, underwent the risk assessment required by the Twitter 2022 Consent Order (V.E.).

    a. If it did, name all individuals involved in the assessment, and provide a copy of the resulting assessment and any related documentation and communications to the extent You haven't already done so.

December 13, 2022
Page 4

      b.  If it did not, explain why not:

           i.  If part of your explanation is that You are relying on "Twitter's existing practices relating to collecting and security accounts' phone numbers," explain those existing practices, and explain why relying on existing practices is sufficient here.

          ii.  If part of Your explanation is that it underwent through "Twitter's standard process to ensure the security, privacy, and general fit for the purpose of its products," explain how this process differs from what's required by Twitter's 2022 Consent Order, and explain why relying on this process is sufficient here.

7.      In Your December 11, 2022, letter, You state that prior to launching Twitter Blue in Australia and Canada in June 2021, the Privacy and Data Protection Team conducted an assessment and determined that Twitter Blue did not present a material risk to the privacy, security, confidentiality, or integrity of Covered Information. Explain the basis for that determination.

8.      In Your December 11, 2022, letter, You state that prior to launching Twitter Blue in the United States on November 9, 2022, the Privacy and Data Protection Team conducted an assessment and:

      a.  "identified some security recommendations." Describe those recommendations, and explain whether Twitter implemented those recommendations.  If it did not, explain why not.

      b.  "determined that this version of Twitter Blue did not present a material risk to the privacy, security, confidentiality, or integrity of Covered Information." Explain the basis for that determination.

9.      Provide documents sufficient to show each materially different claim or statement made to consumers since May 25, 2022, relating to the privacy, security, confidentiality, collection, use, or disclosure of Covered Information, including advertisements, representations, claims, statements, screenshots of consent flows or permission screens, privacy policies, terms of use agreements, tweets, help pages, and blog posts.

10.    Provide documents sufficient to show each materially different claim or statement made to consumers since November 8, 2022, relating to the privacy, security, and confidentiality of Twitter Blue (also known as Twitter Verified), including advertisements, representations, claims, statements, screenshots of consent flows or permission screens, privacy policies, terms of use agreements, tweets, help pages, and blog posts.

11.    Provide all documents constituting or relating to complaints You received from users, researchers, academics, and civic organizations regarding Twitter Blue (also known as

December 13, 2022
Page 5

Twitter Verified) since November 8, 2022, including (1) privacy concerns; (2) security concerns; (3) impersonation issues; and (4) fraud and scams.

12.     State whether, as part of its reduction in workforce, Twitter is deactivating access to its systems by its former employees. If so, describe the process by which Twitter is deactivating such access, including: (a) how quickly after termination employee access is terminated; and (b) the persons responsible for ensuring such access is terminated.

13.     State whether, as part of its reduction in workforce or other cost-cutting measures, Twitter is also selling its office equipment.  If so, state:

    a.   The process by which Twitter is ensuring computing equipment has been sanitized clean of its data;

    b.   The persons responsible for ensuring such computing equipment has been sanitized clean of its data; and

    c.   Any complaints Twitter has received that such computing equipment has not been properly sanitized clean of its data.

                        *        *        *        *        *

Please have a responsible corporate officer or manager of Twitter certify under penalty of perjury that the written report(s) submitted in response to this letter is complete and accurate, and that the report(s) and accompanying document production(s) represent all information responsive to the FTC's requests.

All information provided in response to these requests must be submitted in an electronic format agreed upon by a Commission representative in writing prior to the submission. So that the FTC has the capability of reading and using the data, please ensure that the submission of Electronically Stored Information ("ESI") complies with the Production Instructions provided to you in connection with a prior demand letter, and contact us in advance to arrange for the electronic submission of materials via SFTP. Please send an electronic copy of your responses to the Commission at DEBrief@ftc.gov, with copies to rkim1@ftc.gov.

Finally, Twitter should suspend any routine procedures for document destruction and take other measures to preserve all records relating to the matters addressed in this letter, including electronically stored records that are stored on backup media and all physical records stored offsite, in a form that includes the complete record.

December 13, 2022
Page 6

Sincerely,

Reenah L. Kim

cc:     Lisa K. Hsiao, USDOJ
        Zachary L. Cowan, USDOJ