DocuSign Envelope ID: F5F1649E-35B0-4AFA-971F-5B4D1E870EF7

**KELLEY DRYE & WARREN LLP**
Rebecca B. Durrant (SBN 350444)
Rdurrant@kelleydrye.com
888 Prospect Street, Suite 200
La Jolla, CA 92037
Tel.: (212) 808-7551
Fax: (212) 808-7897

**KELLEY DRYE & WARREN LLP**
Laura Riposo VanDruff (*pro hac vice* application forthcoming)
Lvandruff@kelleydrye.com
Washington Harbour
3050 K Street NW, Suite 400
Washington, DC 20007
Tel.: (202) 342-8400
Fax: (202) 342-8481

*Attorneys for Non-Party*
*Ernst & Young LLP*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　　Plaintiff,<br><br>　　v.<br><br>TWITTER, INC.,<br><br>　　　　　　　Defendant. | Case No. 3:22-cv-03070-TSH<br><br>**DECLARATION OF THOMAS F. REDDY**<br><br>Hon. Thomas S. Hixson |

CASE NO. 3:22-cv-03070-TSH
DECLARATION OF THOMAS F. REDDY

I, Thomas F. Reddy, declare as follows:

1. I am the Director of Dispute Operations for Nonparty Ernst & Young LLP ("EY").

2. As part of my role within EY's General Counsel's Office, I focus on issues related to electronic discovery, including the firm's responses to subpoenas and other discovery requests.

3. I submit this declaration in support of the EY's Statement in Support of Plaintiff United States' Motion to Consider Whether Other Parties' Material Should be Sealed, which is filed pursuant to Civil Local Rule 79-5(f).

4. Specifically, I submit this declaration in support of EY's Statement to Maintain the Seal of the following documents:

| Document Title | Portion Filed Under Seal | Reasons for Sealing |
| --- | --- | --- |
| Exhibit H of the Declaration of Scott P. Kennedy (the "EY Memorandum") | Entire Document | Contains confidential and proprietary business information |
| United States' Opposition to X Corp.'s Motion for Protective Order and Relief from Consent Order | Page 11, lines 15-16 | Directly quotes the EY Memorandum |

5. I have personal knowledge of the facts set forth in this declaration, and if called as a witness, I could and would testify competently thereto.

6. As part of a May 2022 Consent Order between the FTC and Twitter, Inc., now known as X Corp., ("Twitter"), Twitter retained EY as its independent assessor in September 2022.

7. EY resigned from its position as Twitter's independent assessor in February 2023.

8. After EY resigned from its position as Twitter's independent assessor, the FTC utilized its compliance monitoring provisions of the Consent Order Part XIII.A to issue a subpoena to EY. The FTC's subpoena sought documents regarding EY's work related to the Consent Order.

9. One of the documents EY produced to the FTC was an internal memorandum documenting the details of EY's decision to resign as Twitter's independent assessor (the "EY Memorandum").

10. EY designated the EY Memorandum as confidential pursuant to FTC Act Section 21, 15 U.S.C. § 57b-2.

11. The FTC also deposed EY partner David Roque. During Mr. Roque's deposition, FTC Staff questioned him about the EY Memorandum. The EY Memorandum was introduced as Exhibit 011 to the Roque Deposition. Counsel for Twitter also questioned Mr. Roque about the document.

12. On or about July 13, 2023, Twitter filed a Rule 60(b) motion for a protective order and for relief from its Consent Order with the FTC.

13. In its opposition to Twitter's Rule 60(b) motion, the United States provisionally filed under seal the EY Memorandum, attached as Exhibit H to the Kennedy Declaration. The United States also filed under seal portions of its brief quoting the EY Memorandum.

14. The EY Memorandum consists of confidential and proprietary information about EY's business decisions.

15. For instance, the EY Memorandum includes tasks that EY performed as Twitter's independent assessor, as well as specific factors that EY executives evaluated when deciding whether the company should resign as Twitter's independent assessor.

16. If the EY Memorandum is publicly filed, EY would suffer from significant harm.

17. Public disclosure would first allow EY's competitors to have insight into EY's internal strategy and decision-making processes.

18. Moreover, public disclosure would also have ramifications for EY's other clients for which EY performs similar services.

19. If EY's internal resignation memo were made public, companies may be less likely to retain EY for assessment services out of fear that documents pertaining to their assessments would also be at risk of being made publicly available. This too would hurt EY's competitive standing.

20. Because of these concerns, EY has taken several steps to maintain the confidentiality of the EY Memorandum:

21. First, this document has been internally designated as being for internal EY use only, meaning no EY employee may disclose it or its contents without permission.

22. Second, when EY produced this document to the FTC pursuant to the FTC's subpoena, it did so pursuant to the FTC Act's confidentiality protections.

23. Third, when EY provided the document to the District of D.C. as part of its opposition to Twitter's Motion to Compel Compliance with a Subpoena, the document was filed under seal to protect EY's confidentiality.

24. I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

This declaration is made this 18th day of September, 2023.

By: 
Thomas F. Reddy